UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AVIS TUMPKIN,                                        Case No. 13-12883

                Plaintiff,                        Hon. John Corbett O'Meara

v.

ANDREWS DELIVERY SERVICES, INC.
and AL ANDREWS,

                Defendants.

_____/

**ORDER AND OPINION DENYING PLAINTIFF TUMPKIN'S NOVEMBER
11, 2013 MOTION FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT ANDREWS DELIVERY SERVICES' NOVEMBER 14, 2013
<u>MOTION FOR SUMMARY JUDGMENT</u>**

       Avis Tumpkin filed a motion for summary judgment under Fed. R. Civ. P.
56(a) November 11, 2013.  Andrews Delivery Services filed an amended motion
for summary judgment November 14, 2013.  The court heard oral argument April
24, 2014.  For the reasons set forth below, the court will deny plaintiff Tumpkin's
motion for summary judgment and will grant defendant Andrews Delivery
Services' motion for summary judgment.

<u>**FACTS**</u>

       Plaintiff Avis Tumpkin was a truck driver for the defendant delivery-service
company, which has the United States Postal Service ("USPS") as its primary

client.  Defendant is a domestic, for-profit corporation and is registered under the laws of Michigan.

Plaintiff worked as a full-time employee delivering USPS mail.  Her routes did not extend beyond state lines and remained in Michigan, intrastate.  Plaintiff worked more than 40 hours per week and was paid a flat rate for her driving services.  In accumulating the hours, Plaintiff may have worked several split shifts.  During Plaintiff's typical workweek, the hourly requirements averaged 66 hours.  These hourly requirements lasted through the duration of Plaintiff's employment.

Based on those hourly requirements, Plaintiff's lawsuit claims that she was not paid at the rate set for overtime wages in excess of forty hours under the provisions in the Fair Labor Standards Act ("FLSA").  Defendant delivery service argues that the motor-carrier exemption applies, which exempts the plaintiff from overtime wage requirements under FLSA.

## LAW AND ANALYSIS

### 1. Fair Labor Standards Act

Title 29 U.S.C. § 207(a)(1) provides that an employer must compensate the employee for the employee's services at 1 ½ times the hourly rate for work in excess of 40 hours.  See Baird v. Wagoner Transp. Co., 425 F.2d 407, 409 (6th Cir. 1970), cert. denied, 91 S. Ct. 58 (1970).  Section 29 U.S.C. § 213, however, provides exemptions from § 207's requirements.  Maximum hour requirements do

not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49. . . ." § 213(b)(1); 49 U.S.C. § 31502.

The court must find the extent of the Secretary of Transportation's ("SOT") power. The SOT has the power under § 31502 to establish maximum hourly service standards. § 213(b)(1). Further, under § 31502, the SOT's power "applies to transportation . . . described in sections 13501 and 13502." Under § 13501, the "[SOT] . . . [has] jurisdiction . . . over transportation by a motor carrier . . . to the extent that passengers, property, or both are transported by a motor carrier . . . between a place in . . . a state and a place in another state. . . [.]" (i.e. the Motor Carrier Act's interstate commerce applicability provision); see also Baird, 425 F.2d at 409-10 (The statutes have been amended, but the analysis indicates application of the former provisions.); Baez v. Wells Fargo Armed Serv. Corp., 938 F.2d 180, 181-82 (11th Cir. 1991), cert denied, 502 U.S. 1060 (1992); see also Burris v. Bozzay Roadrunner Serv., Inc., 651 F. Supp. 36, 37-38 (D.C. Mo. 1986) (indicating district courts' struggles with the changes in the statutory law).

The SOT may make requirements for *motor carriers and private motor carriers* when "(1) qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier; and (2) qualifications and maximum hours of service of employees of, and standards of equipment of, a

motor private carrier, when needed to promote safety of operation." § 31502(b)(1)-(2).

"[T]he . . . [SOT] has the power to establish qualifications and maximum hours of service for truck drivers only if they are engaged in 'interstate commerce' for purposes of the [Motor Carrier Act]...." <u>Baird</u>, 425 F.2d at 410.   If the employee is within the SOT's power, then that employee is exempted from the maximum hour provisions of the FLSA.   <u>Id</u>. at 410, <u>citing</u> <u>Levinson v. Spector Motor Services</u>, 330 U.S. 649 (1947).   The SOT need not actually exercise the power; the power to regulate just needs to exist.   29 C.F.R. § 782.1(a) (codifying case law for purposes of the FLSA); <u>see also</u> <u>Baird</u>, 425 F.2d at 410.

<u>Baird</u> involved truck drivers suing their employer for overtime wages under the FLSA.   <u>Baird</u>, 425 F.2d at 409. The issue was whether the trucking company was subject to the FLSA exemptions of § 213(b)(1).   The issue more narrowly stated: whether the trucking company was engaged in interstate commerce for purposes of the Motor Carrier Act.   The trucking company and their drivers never made transports beyond Michigan's state lines.   In addition, the trucking company worked only for Standard Oil.   Standard shipped to Michigan locations through the trucking company based on sales forecasts.   After orders were placed with Standard, Standard would let the trucking company know the delivery information

and relay copies of the sales forecasts so the trucking company could organize delivery equipment.

The Sixth Circuit held that the drivers were not engaged in interstate commerce within the meaning of the Motor Carrier Act. Id. at 412. However, the court reviewed the activity between Standard, customers, and then delivery drivers collectively. In determining whether Standard, their shipments, customers, and delivery drivers engaged in intrastate commerce, the court reviewed the intrastate factors:

> (1) 'specific orders' of a 'specific quantity' are not moved from one state through the terminal storage of a second state to a specific customer; (2) the use of the terminal storage as a 'local marketing facility' from which products are 'sold or allocated;' and (3) transportation in the furtherance of such 'distribution within a single state is specifically arranged only after sale or allocation from storage.'

Id. at 411, citing Ex Parte No. MC-48 (industry guidelines for petroleum-product shipments).

The Baird court found all of the intrastate factors to apply. Baird, 425 F.2d at 411. First, Standard shipped to a facility in Michigan on the basis of sophisticated sales forecasts. Second, Standard's local facilities were said to hold petroleum in inventory then allocated after orders were placed. Lastly, after customers ordered the petroleum products, delivery shipments were made from the localized facilities.

In this case, the court finds that Plaintiff engaged in interstate commerce—
not intrastate commerce.  First, the USPS ships from locations all over the country.
Shipping locations and related facilities include locations in several states;
eventually, the mail reaches receivers in Michigan, <u>i.e.</u> the customers.[1]
Conversely, mail can be sent out of Michigan through localized facilities to foreign
and domestic locations.  Each situation involves the use of transportation hubs in
several states.  Because it would be uncommon to find intrastate mail with the
USPS, factor one does not apply.

As to factor two, the USPS has locations all over Michigan.  USPS locations
cannot be deemed terminal-storage facilities because mail is not kept in inventory.
From the beginning, mail has a predetermined customer and destination, with
senders located domestically and internationally.  In addition, the USPS does not
sell mail as a product, but rather offers delivery services for letters, packages, and
other shipping-related services.

In reviewing factor three, mail distribution is not specifically arranged after
sale or allocation from storage.  Mail is delivered on daily routes with substantially
similar routes traveled daily.  Further, mail is delivered systematically and not

---

[1] Rarely is mail intrastate; rather, the more likely result is mail and those that deliver the mail are interstate commerce or instrumentalities of interstate commerce, respectively.  <u>See</u> <u>Hodgson v. N.G. Kallas Co.</u>, 480 F.2d 994, 995 (6th Cir. 1973) (Letters to be sent through the mails from Michigan to Ohio was interstate commerce for other provisions of the FLSA.); <u>see also</u> <u>Mitchell v. Lublin, McGaughy & Associates</u>, 358 U.S. 207, 213 (1959) (The court found military bases to be instrumentalities of interstate commerce because aircraft and mail travels through the bases from distant points.); <u>Baez</u>, 938 F.2d at 181 (Armored trucks carrying mail, checks, and coins destined for out-of-state banks was interstate commerce for purposes of the Motor Carrier Act.).

6

specifically allocated from inventories.  In conclusion, the court cannot find the relationship between USPS, Defendant, and Plaintiff wholly intrastate in character.

For purposes of the Motor Carrier Act, Plaintiff is subject to the SOT's power or could be subject to the SOT's power.  Therefore, Plaintiff is not under the protections afforded by the FLSA and is exempt through the motor-carrier exemption.

### 2. Michigan Minimum Wage Law

Plaintiff also alleged a claim under the Michigan Minimum Wage Law ("MWL").  However, the MWL claim is invalid; an employee cannot assert a claim under the MWL where the employee is subject to the provisions of the FLSA, including the exemptions.   Mich. Comp. Laws § 408.394(1)(b) (West 2014).

### <u>ORDER</u>

It is hereby **ORDERED** that Plaintiff's November 11, 2013 motion for summary judgment is **DENIED**.

It is further **ORDERED** that Defendant's November 14, 2013 motion summary judgment is **GRANTED**.

Date: June 24, 2014                           s/John Corbett O'Meara
                                              United States District Judge

I hereby certify that on June 24, 2014 a copy of this order was served upon counsel of record using the ECF system.

s/William Barkholz
Case Manager